Kurt M. Zitzer (Bar No. 014110)
kzitzer@meagher.com
MEAGHER & GEER, P.L.L.P.
16767 N. Perimeter Dr., Ste. 210
Scottsdale, AZ  85260
Tele:  (480) 607-9719
Fax:  (480) 607-9780

Marshall M. Redmon (to be admitted *pro hac vice*)
marshall.redmon@phelps.com
Jeremy T. Grabill (to be admitted *pro hac vice*)
jeremy.grabill@phelps.com
PHELPS DUNBAR LLP
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Tele: 504-566-1311
Fax: 504-568-9130

*Attorneys for Plaintiffs Certain Underwriters at Lloyd's, London Subscribing to Policy Number GLOPR1901546 and National Fire & Marine Insurance Company*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Certain Underwriters at Lloyd's, London Subscribing to Policy Number GLOPR1901546 and National Fire & Marine Insurance Company,<br><br>Plaintiffs,<br><br>v.<br><br>Cobey, Inc.,<br><br>Defendant. | Case No.<br><br>**COMPLAINT**<br><br>(Jury Trial Demanded) |

Plaintiffs Certain Underwriters at Lloyd's, London Subscribing to Policy Number GLOPR1901546 and National Fire & Marine Insurance Co. (collectively, "Underwriters"), for their Complaint against Defendant Cobey, Inc. ("Cobey"), allege the following.

**Parties, Jurisdiction and Venue**

1. Underwriters issued an Architects and Engineers Professional Liability insurance policy to Matrix Service Inc. ("Matrix") bearing policy number GLOPR1901546 for the period July 1, 2019 – July 1, 2020 (the "Policy"). Certain Underwriters at Lloyd's, London are subscribed to 83.34% of the Policy, and National Fire & Marine Insurance Company is subscribed to 16.66% of the Policy.

2. The Lloyd's insurance market consists of syndicates that subscribe to a policy and each syndicate, in turn, is made up of individual members or investors (referred to as "Names"). "Although the Ninth Circuit has not addressed diversity [jurisdiction] requirements involving Names in the Lloyd's insurance market, district courts within the circuit have repeatedly held that the citizenship of each Name must be considered for purposes of determining whether complete diversity exists." *Nat'l Fire & Marine Ins. Co. v. Certain Underwriters at Lloyd's London*, No. 08-1836, 2009 WL 10676368, at *2 (W.D. Wash. June 26, 2009) (internal citation omitted). Here, the syndicates that are subscribed to 83.34% of the Policy are Syndicate 3500,[1] Syndicate 1458, and Syndicate 2987.

    a. Syndicate 3500. Syndicate 3500 is an unincorporated association, the managing agent of which is RiverStone Managing Agency Limited and the corporate member of which is RiverStone Corporate Capital Limited. Both RiverStone Managing Agency Limited and RiverStone Corporate Capital Limited are organized under the laws of the United Kingdom with their principal places of business in the United Kingdom. Accordingly, Syndicate 3500 is a foreign citizen for purposes of diversity jurisdiction.

    b. Syndicate 1458. Syndicate 1458 is an unincorporated association, the managing agent of which is RenaissanceRe Syndicate Management Limited and the corporate member of which is RenaissanceRe

---

[1] Pursuant to a Reinsurance To Close, Syndicate 3500 is the successor-in-interest to Syndicate 1980. Therefore, although Syndicate 1980 appears on the Policy, that interest is now held by Syndicate 3500.

2

Corporate Capital (UK) Limited. RenaissanceRe Syndicate Management Limited and RenaissanceRe Corporate Capital (UK) Limited are both organized under the laws of the United Kingdom, with their principal places of business in London, England. Accordingly, Syndicate 1458 is a foreign citizen for purposes of diversity jurisdiction.

    c. Syndicate 2987.  Syndicate 2987 is an unincorporated association, the managing agent of which is Brit Syndicates Limited and the corporate member of which is Brit UW Limited.  Brit Syndicates and Brit UW Limited are both organized under the laws of England and Wales, with their principal places of business in England and Wales.  Accordingly, Syndicate 2987 is a foreign citizen for purposes of diversity jurisdiction.

3. National Fire & Marine Insurance Company is subscribed to 16.66% of the Policy.  National Fire & Marine Insurance Company is a Nebraska corporation with its principal place of business in Omaha, Nebraska.  Accordingly, National Fire & Marine Insurance Company is a citizen of Nebraska for purposes of diversity jurisdiction.

4. Matrix is an Oklahoma corporation with its principal place of business in Oklahoma.  Matrix is the prime contractor for a liquified natural gas storage facility in Tucson, Arizona (the "Project") owned by Southwest Gas Corporation ("Southwest Gas"). Matrix issued Purchase Order No. 276717006005 to Cobey to design, manufacture, and furnish four rotary screw compressors and related equipment (the "Equipment") for use in the Project.  A true and correct copy of the Purchase Order, with the contract Terms and Conditions, is attached to this Complaint as "Exhibit A."

5. Cobey is a New York corporation with its principal place of business in New York.  Cobey designed, manufactured, and furnished the Equipment to Matrix for the Project.

6. The Purchase Order Terms and Conditions state that the Purchase Order will be governed by Arizona law and that any suit concerning any claims arising out of or relating to the Purchase Order or any breach thereof will be instituted only in a federal or state court seated in Tucson, Arizona.  The United States District Court for the District of Arizona in

Tucson is the federal court located in Tucson, Arizona. Accordingly, pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this Court.

7. Jurisdiction is proper in this Court under 28 U.S.C. § 1332(a) because complete diversity exists between the parties and the amount in controversy exceeds $75,000.

**General Allegations**

8. Cobey promised to design, manufacture, and furnish the Equipment to Matrix in compliance with the requirements of the Purchase Order.

9. Cobey designed, manufactured, and furnished the Equipment to Matrix, but the Equipment failed to properly function.

10. Pursuant to the Purchase Order Terms and Conditions, Matrix was entitled to, and did, provide notice to Cobey of Cobey's non-conforming tender and provided Cobey a reasonable opportunity to cure. Without limitation, from June 20, 2019 to November 13, 2019, Matrix and Cobey engaged in efforts to redesign and achieve proper performance of the Equipment but Cobey failed to provide timely remedies and was ultimately unable to succeed.

11. Based upon Cobey's failure to cure its non-conforming delivery, Matrix was entitled under the Purchase Order to terminate all or any part of the Purchase Order without prejudice to its other rights; bill Cobey and/or back-charge Cobey's account and/or set off against any amounts which are or may become payable by Matrix to Cobey, under the Purchase Order, for any and all liabilities, losses, damages, claims, fees, costs and expenses incurred by Matrix arising out of or in connection with the non-conforming delivery or other breach of the Purchase Order Terms and Conditions by Cobey, including any purchase by Matrix of substitute goods or services from other suppliers, including all handling, packing, crating, freight, security, expediting, and other charges, including the costs to remove and reinstall of the goods, if any, by Matrix for associated delays.

12. On or about November 12, 2019, Matrix terminated the Purchase Order.

13. Since that time, due to the ongoing failure of the Equipment, Matrix has undertaken its own efforts to redesign, repair, and at the request and direction of Southwest

Gas, ultimately replace the Equipment in order to achieve proper performance and final acceptance of the Project by Southwest Gas, at significant expense.

14. Matrix filed a lawsuit against Cobey in the United States District Court for the District of Arizona on July 23, 2020, Case 4:20-cv-00315-RCC (the "First Lawsuit"). Cobey filed its answer and counterclaim in the First Lawsuit on September 8, 2020, and Matrix filed its answer to Cobey's counterclaim on September 28, 2020.

15. Matrix and Cobey agreed to dismiss the First Lawsuit without prejudice and to toll their claims during the pendency of Matrix's discussions with Southwest Gas and its redesign, repair, and ultimate replacement of the Equipment (the "Tolling Agreement"). The Tolling Agreement, executed by Cobey on March 18, 2021 and by Matrix on March 25, 2021, provided that the tolling of claims would end 90 days after the later of Matrix's completion of its ongoing work on the Equipment or resolution of the dispute between Southwest Gas and Matrix related to the Project, unless terminated earlier by either Matrix or Cobey which did not occur.

16. The First Lawsuit was dismissed without prejudice on April 2, 2021.

17. Southwest Gas granted final acceptance of the Project on February 28, 2022.

18. In accordance with the Tolling Agreement, Matrix filed a new lawsuit against Cobey in this Court on May 17, 2022, to timely reassert its claims against Cobey that were previously dismissed without prejudice and tolled. *See* Case 4:22-cv-00233-CKJ.

19. Pursuant to the Policy, Underwriters have reimbursed Martrix for certain losses that Matrix alleges were caused by Cobey. Moreover, as between Underwriters and Matrix, the adjustment of the insured loss is ongoing and future payments by Underwriters to Matrix are possible. Therefore, Underwriters are legally and contractually subrogated to Matrix's claims against Cobey to the extent of Underwriters' payments to Matrix under the Policy, and Underwriters will similarly be subrogated to the extent of any future payments to Matrix under the Policy. Underwriters bring this Complaint to assert their subrogation claims against Cobey.

**Count One – Breach of Contract**

20. Underwriters incorporate their prior allegations as though set forth fully herein.

5

21. Matrix and Cobey entered into a valid and binding contract, the terms of which are contained in the Purchase Order.

22. Cobey, without limitation, failed to properly design, manufacture, and furnish the Equipment to the requirements of the Purchase Order, thereby breaching the Purchase Order, and thereafter failed to adequately remedy its breach despite reasonable opportunity granted by Matrix, resulting in significant damages to Matrix, in an amount to be proven at trial.

23. Underwriters are legally and contractually subrogated to Matrix's claims against Cobey to the extent of Underwriters' payments to Matrix under the Policy, and Underwriters will similarly be subrogated to the extent of any future payments to Matrix under the Policy. Underwriters are therefore entitled to damages from Cobey to the extent of their subrogation rights, in an amount to be proven at trial.

**Count Two – Breach of Express Warranties**

24. Underwriters incorporate their prior allegations as though set forth fully herein.

25. Cobey expressly warranted the Equipment to be of good quality and workmanship, free from all defects in workmanship and materials, merchantable, fit for the purposes intended and strictly conforming to Project specifications and other requirements. Such warranties expressly survives termination of the Purchase Order.

26. Cobey failed to design, manufacture and furnish Equipment that satisfied the foregoing requirements, thereby breaching Cobey's express warranty to Matrix, and causing Matrix significant damages in an amount to be proven at trial.

27. Underwriters are legally and contractually subrogated to Matrix's claims against Cobey to the extent of Underwriters' payments to Matrix under the Policy, and Underwriters will similarly be subrogated to the extent of any future payments to Matrix under the Policy. Underwriters are therefore entitled to damages from Cobey to the extent of their subrogation rights, in an amount to be proven at trial.

**Count Three – Breach of Implied Warranties**

28. Underwriters incorporate their prior allegations as though set forth fully herein.

29. Arizona law creates an implied warranty of merchantability and fitness for a particular purpose in the sale of goods. A.R.S. §§ 47-2314 - 2315.

30. The Equipment was defective and unfit for the ordinary purpose for which such goods are used and unfit for the particular purpose for which the Equipment was required.

31. These implied warranties have not been excluded or modified.

32. Cobey knew of the particular purpose for which the Equipment was required, and Matrix relied on Cobey to design, manufacture, and furnish Equipment suitable for this purpose.

33. Cobey failed to design, manufacture, and furnish Equipment that satisfied the foregoing requirements, thereby breaching Cobey's implied warranties to Matrix, and causing Matrix significant damages in an amount to be proven at trial.

34. Underwriters are legally and contractually subrogated to Matrix's claims against Cobey to the extent of Underwriters' payments to Matrix under the Policy, and Underwriters will similarly be subrogated to the extent of any future payments to Matrix under the Policy. Underwriters are therefore entitled to damages from Cobey to the extent of their subrogation rights, in an amount to be proven at trial.

### Count Four – Indemnification

35. Underwriters incorporate their prior allegations as though set forth fully herein.

36. The Purchase Order Terms and Conditions provide that Cobey will indemnify Matrix from and against any and all liabilities, losses, damages, claims, costs and expenses, including reasonable attorneys' fees, to the proportional extent arising from or attributable to any act, omission, or negligence of Cobey. Such indemnity obligation expressly survives termination of the Purchase Order.

37. The Purchase Order created a duty by Cobey to Matrix to exercise reasonable care in designing, manufacturing, and furnishing the Equipment to Matrix for the Project.

38. Cobey failed to exercise reasonable care in designing, manufacturing, and furnishing the Equipment to Matrix for the Project, causing Matrix significant damages in an amount to be proven at trial, and for which Cobey is obligated to indemnify Matrix but Cobey has failed and refused to do so, thereby breaching its indemnification obligation to Matrix, and causing further significant damages, costs and attorneys' fees, in amounts to be proven at and/or following trial.

39. Underwriters are legally and contractually subrogated to Matrix's claims against Cobey to the extent of Underwriters' payments to Matrix under the Policy, and Underwriters will similarly be subrogated to the extent of any future payments to Matrix under the Policy. Underwriters are therefore entitled to damages from Cobey to the extent of their subrogation rights, in an amount to be proven at trial.

## Count Five – Professional Negligence

40. Underwriters incorporate their prior allegations as though set forth fully herein.

41. Cobey owed Matrix a duty to perform its services under the Purchase Order with professional skill, care, and diligence.

42. Cobey failed to perform its services with professional skill, care, and diligence, thereby breaching its duty to Matrix, and causing Matrix to incur significant damages in an amount to be proven at trial.

43. Underwriters are legally and contractually subrogated to Matrix's claims against Cobey to the extent of Underwriters' payments to Matrix under the Policy, and Underwriters will similarly be subrogated to the extent of any future payments to Matrix under the Policy. Underwriters are therefore entitled to damages from Cobey to the extent of their subrogation rights, in an amount to be proven at trial.

## Prayer for Relief

Wherefore, Underwriters pray for the Court to enter judgment in their favor and against Cobey as follows:

A. For Underwriters' compensatory damages in an amount to be proven at trial;

B. For Underwriters' costs and attorneys' fees as allowed by the Purchase Order and law;

C. For pre-judgment interest on Underwriters' damages and post-judgment interest on Underwriters' damages, costs, and attorneys' fees as allowed by law; and

D. For such other relief as the Court deems just and proper.

**Demand for Jury Trial**

Pursuant to Fed. R. Civ. P. 38, Underwriters hereby demand a jury trial.

DATED this 20th day of May 2022.

                    MEAGHER + GEER, P.L.L.P.

By:   */s/ Kurt M. Zitzer*
      Kurt M. Zitzer
      16767 North Perimeter Drive, Suite 210
      Scottsdale, Arizona 85260

      Marshall M. Redmon
        (to be admitted *pro hac vice*)
      Jeremy T. Grabill
        (to be admitted *pro hac vice*)
      Phelps Dunbar LLP
      Canal Place | 365 Canal Street, Suite 2000
      New Orleans, Louisiana 70130-6534

      Attorney for Plaintiffs Certain Underwriters at Lloyd's, London Subscribing to Policy Number GLOPR1901546 and National Fire & Marine Insurance Company